IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | |
|---|---|
| BEN A. CAVIL, § | |
| § | |
| Plaintiff § | |
| § | |
| v. § | CIVIL ACTION NO. G-10-304 |
| § | |
| TRENDMAKER HOMES, INC., § | |
| SAXON MORTGAGE, CHICAGO § | |
| TITLE INSURANCE COMPANY, § | |
| MORGAN STANLEY MORTGAGE § | |
| CAPITAL HOLDINGS LLC, § | |
| NRT LLC, and NEW CENTURY § | |
| MORTGAGE CORP., § | |
| § | |
| Defendants. § | |

## OPINION AND ORDER

Before the Court, upon the consent of the parties, are the following motions: (1) Defendant Chicago Title Insurance Company's ("Chicago Title") Motion, Notice and Memorandum in Support of Motion to Dismiss for Plaintiff's Failure to State a Claim (Docket Entry ("Dkt.") No. 4), to which Plaintiff filed a Response (Dkt. No. 9), and Defendant Chicago Title filed a Reply (Dkt. No. 16); (2) Defendants Saxon Mortgage Service, Inc. ("Saxon Mortgage") and Morgan Stanley Capital Holdings LLC's ("Morgan Stanley") Motion to Dismiss, or In the Alternative, Motion for a More Definite Statement (Dkt. No. 6), to which Plaintiff filed his Response (*See* Dkt. Nos. 27, 31 &32); (3) Defendant NRT LLC's ("NRT") Motion to Dismiss for Plaintiff's Failure to State a Claim and Incorporated Memorandum in Support Thereof (Dkt. No. 13), to which Plaintiff filed a Response (Dkt. Nos. 24, 31 & 32), and Defendant NRT filed a Reply (Dkt.

1

No. 30); and (4) Defendant Trendmaker Homes, Inc's ("Trendmaker") 12(b)(6) Motion to Dismiss (Dkt. No. 18), to which Plaintiff filed a Response (Dkt. Nos. 31 & 32) along with numerous exhibits. (Dkt. Nos. 33 & 34).[1] After careful consideration of the Motions, the Responses and Replies, and the applicable law, the Court, for the reasons set forth below, **GRANTS IN PART AND DENIES IN PART** Defendants Saxon Mortgage and Morgan Stanley's Motion to Dismiss and **DENIES** Defendants Chicago Title, Trendmaker and NRT's respective Motions to Dismiss.

## I. BACKGROUND AND ALLEGATIONS

Plaintiff Ben Cavil initially brought this action in state court against Defendants after his home, located at 3937 Lake Star Drive, League City, Texas (hereinafter "the Property"), was sold at foreclosure. By way of a brief history, on or about February 16, 2007, Cavil secured a first and second mortgage in the amount of $541,000.00 to purchase the Property. The closing documents reflect that the lender, New Century Mortgage Company ("New Century"), could assign, sell or transfer the note for servicing, but, as of the date of the closing, the documents reflect that New Century had not decided whether or not this would be done and that it actually only transferred between 26 - 50% of its loans. Nonetheless, sometime after the closing, New Century transferred the loan, but allegedly never informed Cavil of this fact.

---

[1] The Court pauses to note that Docket Entry Number 33 reflects that Cavil's attorney electronically filed 15 exhibits (numbered 1-15) on November 21, 2010, and then, that same day, electronically filed another 15 exhibits (also numbered 1-15), but listed this as a "renewed" exhibit list. (Dkt. No. 34). To the extent that counsel merely intended replace one set exhibits for the other, the Court requests that she make her intent clear so, in the future, the Court does not expend valuable time printing and then reviewing numerous documents that are merely duplicates.

At some point in the loan, Cavil became unable to make his mortgage payment and sought a loan modification under the Home Affordable Modification Program ("HAMP"). Cavil qualified for the program and his loan was modified. Before making his second payment under the modified loan, Cavil explained that he experienced a family emergency and could not make even the modified payments. Faced with financial difficulties, Cavil sought another modification under HAMP. He alleges that he was told that he could do another modification and that a new HAMP application packet would be sent to him. Cavil alleges that on or around December 10, 2009, he received a letter from Saxon Mortgage which informed him that his modification was being taken out of HAMP and that his modification request was denied. After receiving the letter, Cavil contacted Saxon Mortgage to discuss the additional HAMP modification he requested and he alleges that he was again told that he could submit another application for a loan modification, that a packet would be sent to him, and that he should take no action until his application was processed. Despite Saxon Mortgage's representations that it would work with him to modify his loan again and protect his home from going into foreclosure, Cavil alleges that, unbeknownst to him, Saxon Mortgage authorized its agent, NRT, to put the Property on the market for a transfer value of $340,000.00 and, on or around January 2010, the Property was sold at a non-judicial foreclosure sale for $340,000.00 to Saxon Mortgage Services (a subsidiary of Morgan Stanley). Cavil maintains that he was never notified that the Property was going to be foreclosed. Cavil alleges that he only learned about the sale when a representative from either Saxon Mortgage or NRT knocked on his door and informed him that the Property had been foreclosed and the was offered a monetary incentive of $4,800 in cash to immediately vacate the property.

Following the foreclosure sale, Cavil filed suit against Defendants Trendmaker Homes, Saxon Mortgage, Chicago Title, Morgan Stanley, NRT, and New Century in state court and alleged numerous causes of action. The basis of Cavil's claims all rested on the following factual allegations: (1) that he was not told that the sale of the residential lot he purchased did not include the mineral rights; (2) that he was erroneously told that he could apply for a second HAMP modification and, until it was approved, he would not have to make additional payments; (3) that while he was waiting for the information on the second HAMP application to be sent for him, Defendants were secretly moving to foreclose on the Property; and (4) that he was not given prior notice of the intent to accelerate his note and foreclose on the Property. Further, while in state court, Cavil moved for and was granted two temporary restraining orders to prevent Defendants from evicting him from the Property. (Dkt. No. 1, Exs. B-4, B-8, B-10, & B-11). The second 10-day temporary restraining order, which was granted on August 6, 2010. Thereafter, notice of removal was filed and the action was removed from state court to federal court on August 11, 2010.

After the action was removed, Defendants filed their respective Motions to Dismiss seeking dismissal of the entire action. (Dkt. Nos. 4, 6, 13 & 18). Cavil then sought and received permission to amend his complaint. In Cavil's Second Amended Complaint, based on fundamentally the same factual allegations he asserted in state court, he asserts the following causes of action against Defendants: (1) violation of the Real Estate Settlement Procedure Act ("RESPA"); (2) violation of the Texas Deceptive Trade Practice Act ("DTPA") and the Federal Deceptive Trade Practice Act "as well as, and the Tie-In violations of the" (a) Fair Debt Collection Act; (b) Breach of Warranties; (c) Failure to Make Disclosure; and (d) Insurance Code Violations; (3) a violation of Texas Finance Code § 302.001; (4) violations of the Texas usurer

4

law; (5) fraud; (6) negligence; (7) gross negligence; (8) negligence pro se; (9) wrongful foreclosure; (10) harassment; (11) conspiracy; (12) breach of contract; and (13) promissory estoppel. (Dkt. No. 27 at 2).[2]  Cavil seeks a declaration that the transaction is void. In addition he seeks damages which consist of actual damages for the loss of the Property, including the loss of the mineral rights, damages for pain and suffering, and exemplary damages.

## II. STANDARDS OF REVIEW

Defendants have filed their Motions to Dismiss under Rule 8, 9 and 12.[3]  Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). To satisfy this requirement, the statement must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002) (internal citations omitted); *see also Christopher v. Harbury*, 536 U.S. 403, 416 (2002) (the elements of the plaintiff's claims "must be addressed by allegations in the complaint sufficient to give fair notice to a defendant").

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.

---

[2] Cavil's attorney filed "Plaintiff's Second Ammended [sic] Petition and Response to Defendant's Motion to Dismiss" on November 12, 2010 (Dkt. No. 24), and then "Plaintiff's Second Ammended [sic] Petition and Jury Demand Responses to Defendant's Motion to Dismiss" on November 17, 2010 (Dkt. No 27). Although counsel for Cavil does not explain the reason she filed the subsequent pleading, the Court will consider it to be the live pleading.

[3] The Court will discuss Rule 9 below.

2007), *cert. denied*, 552 U.S. 1182 (2008) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted); *see also*, *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quoting *Twombly*, 127 S.Ct. at 1965) (internal quotation marks, citations, and footnote omitted); *see also*, *Ashcroft v. Iqbal*, _U.S._, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (reiterating that "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations" and only when pleadings are supported "by well-pleaded factual allegations," should a court "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

### III. DISCUSSION

#### A. Defendants Trendmaker Homes, NRT and Chicago Title's Motions to Dismiss

An amended complaint supersedes a prior complaint and renders it of no legal effect unless the amended complaint specifically refers to or adopts the earlier pleading. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)). Plaintiff's Second Amended Complaint (Dkt. Nos. 24 & 27) appears to re-plead at least some of the claims underlying the pending motions but makes no reference to nor adopts any portion of Plaintiff's first amended complaint (*See* Dkt. No. 1). Because the currently pending

6

motions to dismiss, which do nothing more than attack the claims collectively in blanket form, address only the claims in Cavil's prior complaint, the Court **DENIES** the motions as moot.[4]

### B. Defendants Saxon Mortgage and Morgan Stanley's Motion to Dismiss

Defendants Saxon Mortgage and Morgan Stanley bring a Motion to Dismiss several, but not all, of the claims Cavil has asserted against them.[5] The Court proceeds to address each issue raised in Defendants Saxon Mortgage and Morgan Stanley's Motion to Dismiss.

#### 1. *RESPA*

Defendants Saxon Mortgage and Morgan Stanley seek dismissal of Cavil's claims against them under RESPA. In particular, Defendants contend that they can not be held liable under 12 U.S.C. § 2605(b) because Cavil does not allege that either are transferors; that Defendant Morgan Stanley can not be liable under 12 U.S.C. § 2605(c) because its application is limited to loan servicers, which it is not; and that Cavil fails to adequately allege all the elements necessary to assert a claim against them under 12 U.S.C. §2605(c). (Dkt. No. 6 at 14-16). Cavil filed responses to Defendants' Motion and also filed his Second Amended Complaint on November 17, 2010. (*See* Dkt. Nos. 24 & 27).

---

[4] The Court notes in passing that, even if these Defendants' Motions to Dismiss were not moot, Cavil's pleadings, while perhaps not extremely artful, appear sufficient to state claims against them.

[5] In his Second Amended Complaint, Cavil also asserts that Defendants violated the Texas usury laws claims, engaged in a conspiracy against him, and harassed him. In addition, Cavil asserts that Defendants' conduct was grossly negligent and negligent per se. Since none of these claims were addressed by Defendants in their Motion to Dismiss, the Court notes that it would be inappropriate for it to address the viability of these claims *sua sponte*.

The rules and procedures contained in RESPA are found in Title 12 of the United States Code. In particular, 12 U.S.C. § 2605 requires a transferee *and* transferor to give notice to the owner when notes on mortgages are transferred. 12 U.S.C. § 2605(b) (duties of transferor) & § 2605(c) (duties of transferee).

Initially, while not evident from his pleadings, to the extent Cavil makes a claim under § 2605(b), the Court agrees with Defendants that his claim would fail because he does not allege that either Defendant Saxon Mortgage or Morgan Stanley was a transferor. Further, with regard to Defendant Morgan Stanley, because Cavil does not allege that it was a servicer of the loan, the Court agrees that the claim against Morgan Stanley under 12 U.S.C. § 2605(c) must also be dismissed.

Cavil does, however, allege that Defendant Saxon Mortgage was the transferee of his mortgage and that it failed to give the required notice under the statute and/or regulations. Accordingly, the Court is of the opinion that Cavil's pleading is sufficient to state a claim against Defendant Saxon Mortgage under 12 U.S.C. § 2605(c) and, thus, denies Defendants' Motion on this point.

### 2. *Texas Deceptive Trade Practices Act (DTPA)*

Defendants Saxon Mortgage and Morgan Stanley seek dismissal of the DTPA claims against them on the ground that Cavil is not a consumer under the DTPA and on the ground that Cavil has not adequately pled that they violated the DTPA. (Dkt. No. 6 at 19-20). Cavil filed a Response to Defendants' Motion and merely asserted that he is a "consumer" under the DTPA because he is "an individual who purchased a service from Saxon Mortgage" and a service includes the drafting of loan modification documents. (Dkt. No. 24 at 8). On this point, the Court must agree with Defendants.

In order to establish a claim under the DTPA, a plaintiff must establish that (1) the plaintiff is a consumer, (2) the defendant can be sued under the DTPA, (3) the defendant committed a false, misleading, or deceptive act or practice, and (4) the act or practice was a producing cause of the plaintiff's damages. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996). To qualify as a consumer under the DTPA, Cavil must have sought or acquired goods or services by purchase or lease, **and the goods or services must form the basis of the complaint**. [Emphasis added]. *See* TEX. BUS. & COM.CODE ANN. § 17.45(4) (Vernon 2001); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex. 1981); *see also*, *Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992) (distinguishing cases where complaint is with regard to the tangible property as opposed to a loan, the court held that plaintiff who borrows money, even if incidental to a completed mortgage loan, is not a consumer for purposes of the DTPA).

Here, Saxon Mortgage and Morgan Stanley, while not the original lender, purchased the note from the lender. At best, Defendants Saxon Mortgage and Morgan Stanley stepped into the shoes of the lender, New Century, who loaned money to Cavil. Thus, for the purposes of Cavil's claims against these Defendants, a mortgage or modification of a mortgage is not a good or a service under the DTPA. *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 174-75 (Tex.1980); *Everson v. Mineola Comm. Bank, S.S.B.*, No. 12-05-334-CV, 2006 WL 2106959 (Tex.App.–Tyler, July 31, 2006, review denied)[6] (court found homeowners were not consumers based on mortgage or allegedly forced purchase of purchase mortgage insurance where DTPA claim had nothing to do with either the property or the insurance, but involved wrongful foreclosure); *Fix v. Flagstar, F.S.B.*, 242 S.W.3d 147, 160-61 (Tex.App.–Ft. Worth 2007,

---

[6] While not in the regional reporter, the opinion reflects the court ordered it to be published.

review denied) (refinancing of purchased home is not a good or service for purposes of qualifying as a consumer under the DTPA); *Grant-Brooks v. WMC Mortgage Corp.*, No. 3:02-CV-2455-AH, 2003 WL 23119157 (N.D. Tex. Dec. 9, 2003) (home equity loan is not a good or service). Furthermore, as to these Defendants, because Cavil is not a consumer under the DTPA, his claims under the tie-in provisions would also fail. TEX. BUS. & COM. CODE § 1750(h); *Burnette v. Wells Fargo Bank, N.A.*, No. 4:09-CV-370, 2010 WL 1026968 at *9 (E.D. Tex. Feb. 16, 2010).[7]

### 3. *Federal Fair Debt Collection Act or Texas Debt Collection Act*

Defendants seek dismissal of Cavil's claims under the Federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 (1982), and the Texas Debt Collection Act (TDCA), TEX. REV. CIV. STAT. ANN. arts. 5069-11.01 to 5069-11.11 (Vernon Supp.1985). In particular, Defendants maintain that "Plaintiff's conclusory allegation that Saxon constitutes a 'debt collector' lacks factual support, and because the Complaint fails to set forth of [sic] well-pleaded allegations showing that Saxon engage in prohibited conduct." (Dkt. No. 6, at 16, ¶ 17). Cavil has filed a response to Defendants' Motion refuting these points.

The FDCPA makes it unlawful for debt collectors to use abusive tactics while collecting debts for others. The FDCPA defines a debt collector as "any person … who regularly collects or attempts to collect … debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term "debt collector" does not include:

---

[7] The Court notes in passing that its opinion is limited to Defendants Saxon Mortgage and Stanley Morgan who acquired the note at some point after the closing of the Property. The Court draws this distinction between the Defendants because Cavil's claim against Defendants Trendmaker and Chicago Title appears to be based on the property or the title insurance provided (*i.e.*, allegedly not disclosing that the mineral rights were not part of the sale and that the mineral rights were owned by another). *See*, *Chicago Title Ins. Co. v. McDaniel*, 875 S.W.2d 310 (Tex. 1994) (DTPA claim against title company was based on a claim that the property was subject to an existing lien which was not discovered by the title company).

> [A]ny person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … (ii) concerns a debt which was originated by such person [or] (iii) concerns a debt which was not in default at the time it was obtained by such person.

15 U.S.C. § 1692a(6)(G). The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, *as long as the debt was not in default at the time it was assigned*. [Emphasis added]. *See* S.Rep. No. 95-382, 95th Cong., 1st Sess. 3, reprinted in 1977 U.S.Code Cong. & Ad.News 1695, 1698. *See also*, *Kizer v. Finance America Credit Corp.*, 454 F.Supp. 937, 939 (N.D.Miss. 1978).

In his Complaint, Cavil alleges that sometime after closing and without his knowledge, New Century assigned, transferred or sold his note; however, it is unclear from the pleadings whether the debt was in default at the time it was assigned. While the facts in the case might ultimately reveal that the debt was not in default at the time it was transferred, sold or assigned, at this stage of the litigation the Court is constrained by the pleadings and, therefore, must deny Defendants Saxon Mortgage and Morgan Stanley's Motion to Dismiss the FDCPA claim.

Turning to the TDCA, the Court notes that the TDCA has a broader definition of a debt collector. *See* TEX.REV.CIV.STAT.ANN. art. 5069-11.01(c) ("'Debt collector' means any person engaging directly or indirectly in debt collection"). In his Second Amended Complaint, Cavil alleges that he and "his family were harassed and subjected to emotional duress [sic]" in order to collect the debt. (Dkt. No. 27 at 7). Under the broader definition, the Court believes that Cavil has sufficiently alleged a claim under the TDCA. Defendants' Motion on this issue is denied.

11

### 4. *HUD Regulations*

Defendants Saxon Mortgage and Morgan Stanley seek dismissal of Cavil's claim that they violated HUD (Housing and Urban Development) regulations on the basis that the regulations do not create a private cause of action for property owners. The Court agrees. Violations of HUD regulations by a mortgagee do not, standing alone, bestow a private cause of action on a mortgagor plaintiff. *Mitchell v. Chase Home Finance LLC*, No. 3:06-CV-2099-K, 2008 WL 623395 at *3 (N.D.Tex. March 4, 2008); *see also*, *Wells Fargo Home Mortgage, Inc. v. Neal*, 922A.2d 538, 543-44 (Md. 2007 (detailing authority across country that has rejected any argument that a violation of the HUD regulations creates private cause of action); *but see Baker v. Countrywide Home Loans, Inc.*, 3:08-CV-0916-B, 2008 WL 1810336 (N.D.Tex. June 24, 2009) (recognizing that violation of HUD regulations, which were incorporated into the contract between mortgagee and mortgagor, could provide a basis for a breach of contract claim). Accordingly, insofar as Cavil attempts to bring a private cause of action against Defendants Saxon Mortgage and Morgan Stanley for their alleged violation of the HUD regulations, his claim fails as a matter of law and is, therefore, dismissed.

### 5. *Wrongful Foreclosure*

Cavil maintains that Defendants Saxon Mortgage and Morgan Stanley wrongfully forclosed on the Property. Texas recognizes an action for wrongful foreclosure. An action for wrongful foreclosure may be brought by individuals suffering harm due to irregularities in a foreclosure sale. *See Leggette v. Washington Mutual Bank, FA*, No. 3:03-CV-2909-D, 2005 WL 2679699, at *2 (N.D.Tex. Oct.19, 2005) (Fitzwater, J.); *Peterson v. Black*, 980 S.W.2d 818, 823 (Tex.App.–San Antonio 1998, no writ); *Wieler v. United Savings Assoc. of Tex.*, 887 S.W.2d 155, 158 (Tex.App.–Texarkana 1994), writ denied, 907 S.W.2d 454 (Tex. 1995) ("a person who

suffers loss or material injury because of irregularities in a foreclosure sale is entitled to maintain a suit for wrongful foreclosure"). To state a claim for wrongful foreclosure, a plaintiff must allege the following elements: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price, and (3) a causal connection between the defect and the grossly inadequate selling price. *See Charter Nat'l Bank-Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex.App.-Houston [14th Dist.] 1989, writ denied).

In his Second Amended Complaint, Cavil alleges that foreclosure was wrongful because he did not receive notice of the foreclosure. A notice of foreclosure must be in writing and must be sent by certified mail to each debtor, who according to the records of the holder of the debt, is obligated to pay the debt. TEX. PROP.CODE ANN. § 51.002(b)(3). Service by certified mail is complete when the notice is deposited in the U.S. mail, postage prepaid, and addressed to the debtor at the debtor's last known address as shown by the records of the debt holder. *Id.* § 51.002(e). In his pleadings, Cavil also insists that, as a result of the failed notice, the property was ultimately sold to the bank at foreclosure for an inadequate price which resulted in a loss to him of over $200,000.00. Taking Cavil's allegations as true for purposes of a motion to dismiss, the Court finds that Cavil's Second Amended Complaint states a claim for wrongful foreclosure.

While Defendants Saxon Mortgage and Morgan Stanley maintain that Cavil fails to state a claim for wrongful foreclosure because he still occupies the house, the Court simply cannot agree. In support of its argument, Defendants rely on *Baker v. Countrywide Home Loans*, No. 3:08-CV-0916-B, 2009 WL 1810336 (N.D.Tex. June 24, 2009); however, unlike the facts in *Baker* where the foreclosure sale of the property was stopped, the allegations in the Second Amended Complaint reflect that the Property was foreclosed upon and that it was sold to the bank for $340,000.00. Even though it appears that Cavil may still occupy the Property, the Court is not

convinced, given the authority relied upon, that this alters the fact that the Property has been sold at foreclosure which would be sufficient to state a claim for wrongful foreclosure. Accordingly, Defendants' Motion on this issue is denied.

### 6. *Breach of Contract*

Cavil alleges that Defendants Saxon Mortgage and Morgan Stanley are in breach of contract for failing to adhere to the contractual and statutory usurer interest rates and for failing to adhere to the notice provisions in the deed of trust and promissory note regarding the intent to accelerate the note and foreclose on the Property. To allege a claim for breach of contract, Texas law requires the plaintiff allege the existence of a valid contract, the performance or tendered performance by the plaintiff, that defendant breached the contract and that plaintiff sustained damages as a result of the breach.

Defendants Saxon Mortgage and Morgan Stanley maintain that Cavil's breach of contract claim against them should be dismissed because he fails to describe the alleged terms of the contract in a sufficient manner to give them notice of the nature of the claim. However, despite Defendants' protests to the contrary, the Court finds that Cavil's Second Amended Complaint meets the basic pleading requirements to set for the a claim for breach of contract. *See e.g., Baker v. Countrywide Home Loans, Inc.*, 3:08-CV-0916-B, 2008 WL 1810336 (N.D.Tex. June 24, 2009) (recognizing that violation of HUD regulations, which were incorporated into contract between mortgagee and mortgagor, could provide a basis for a breach of contract claim). The Court, therefore, denies Defendants' Motion to Dismiss this claim.

### 7. *Negligence*

Cavil asserts a cause of action for negligence against all defendants which include Defendants Saxon Mortgage and Stanley Morgan. In order to recover for negligence, the plaintiff must prove (1) the existence of a legal duty, (2) the breach of that duty, and (3) damages proximately caused by the breach. *See Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex.1998).

Defendants Saxon Mortgage and Morgan Stanley seek dismissal of Cavil's claim on the basis that he merely alleges that Defendants mismanaged Cavil's account which amounts to nothing more than a "bare-bone conclusory allegation" because he fails to specify what duty was owed, how the duty was breached and how any such breach harmed him. (Dkt. No. 6 at 25-26). The Court cannot agree. A review of Cavil's Second Amended Complaint, reflects that he alleged that, based on the loan agreement, which specifically incorporated the regulations of the Department of Housing and Urban Development ("HUD"), the Defendants had a duty to mortgagors, such as himself, to provide notice of any transfer, assignment or sale of the note, to properly manage the loan and escrow account, to comply with the notice provisions contained in the deed of trust before accelerating the note and foreclosing on the property, and, when applying for a mortgage modification, to protect their rights and not mislead them. Cavil alleges that Defendants breached the duties they owed to him and as a result of this breach he was damaged. Defendants' Motion to Dismiss Cavil's negligence claim is, therefore, denied.

### 8. *Fraud*

Cavil alleges that Defendants engaged in fraud. The elements of common law fraud are (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with

15

the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In Re Firstmerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001). The elements of statutory fraud are the same as common law fraud except that in the case of statutory fraud, it is not necessary to prove that the speaker acted with "knowledge or recklessness." *Brush v. Reata Oil & Gas Corp.*, 984 S.W.2d 720, 726 (Tex.App.-Waco 1998, writ denied); *see also* TEX. BUS. & COM.CODE ANN. § 27.01 (Vernon 2002).

Defendants contend that Plaintiff's fraud claims are not stated with particularity under the heightened pleading standard required under Rule 9, Federal Rules of Civil Procedure. The Court agrees. While the allegations in the Second Amended Complaint are slightly more specific than those in the original complaint, they nevertheless fall short of what is required of a cause of action for fraud. "A fraud cause of action requires a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Formosa Plastics v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (citation and internal quotation marks omitted). A plaintiff asserting fraud must plead the "who, what, when and where" as to the allegedly fraudulent conduct. In other words, to plead fraud with the requisite particularity, a pleading must specify the statements alleged to be fraudulent, "identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 256 (5th Cir.), *modified and reh'g denied*, 409 F.3d 653 (2005). Plaintiff's Second Amended Complaint is deficient in this regard and, thus, Defendants' Motion to Dismiss this claim is granted.

9. *Fifth Amendment Claim*

Defendants Saxon Mortgage and Morgan Stanley seek dismissal of Cavil's Fifth Amendment Claim. While the Court agrees that a Fifth Amendment claim against these Defendants would fail because they are not state actors, this issue is now moot. In particular, when Cavil filed his Second Amended Complaint, no Fifth Amendment claim was asserted, thus, claim has been abandoned by Cavil. Accordingly, Defendants motion on this point is denied as moot.

## CONCLUSION

For all the reasons discussed herein, it is the **ORDER** of this Court that Defendants Trendmaker Homes', NRT's and Chicago Title's Motions to Dismiss (Dkt. Nos. 4, 13, and 18) is **DENIED** without prejudice as **MOOT**.

It is the further **ORDER** of this Court that Defendants' Saxon Mortgage and Morgan Stanley's Motion to Dismiss (Dkt. No. 6) is **GRANTED** with regard to the following causes of action: (1) Plaintiff's cause of action under 12 U.S.C. § 2605(b) against both Defendants and under 12 U.S.C. § 2605(c) against Defendant Morgan Stanley; (2) his cause of action under the DTPA and the tie-in provision; (3) his cause of action based on the HUD regulations; (4) and his cause of action for fraud; and **DENIED** with regard to all other claims.

**DONE** at Galveston, Texas, this _____29th_____ day of December, 2010.

John R. Froeschner
United States Magistrate Judge