IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| BEN A. CAVIL, | § § | |
| Plaintiff | § § | |
| v. | § § | CIVIL ACTION NO. G-10-304 |
| TRENDMAKER HOMES, INC., SAXON MORTGAGE, CHICAGO TITLE INSURANCE COMPANY, MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, NRT LLC, and NEW CENTURY MORTGAGE CORP., | § § § § § § § § | |
| Defendants. | § § | |

## OPINION AND ORDER

Before the Court, with the consent of the parties, is Defendant Chicago Title Insurance Company's ("Chicago Title") Motion for Summary Judgment (Docket Entry ("Dkt.") No. 67), to which Plaintiff filed no response. Despite the lack of response, the Court has considered the Motion, the submissions, and the applicable law. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988) (a court may not grant a default summary judgment, but may accept the movant's evidence as undisputed and determine movant's entitlement to summary judgment based upon that undisputed evidence). After careful consideration, the Court, for the reasons set forth below, **GRANTS** Chicago Title's Motion for Summary Judgment.

1

## I. BACKGROUND

Plaintiff Ben Cavil initially brought this action in state court against Defendants after his home, located at 3937 Lake Star Drive, League City, Texas (hereinafter "the Property"), was sold at foreclosure. By way of a brief history, on or about February 16, 2007, Cavil secured a first and second mortgage in the amount of $541,000.00 to purchase the Property. Prior to closing on the Property, Chicago Title provided Cavil with a Title Commitment and issued a Title Policy.

At some point in time after closing on the Property, Cavil became unable to make his mortgage payment and sought a loan modification under the Home Affordable Modification Program ("HAMP"). Cavil qualified for the program and his loan was modified. Prior to making his second payment under the modified loan, Cavil explained to the lender[1] that he was experiencing a family emergency and could not even make the modified payments. Faced with financial difficulties, Cavil sought another modification under HAMP. He alleges that he was told that he could do another modification and that a new HAMP application packet would be sent to him. Cavil alleges that on or around December 10, 2009, he received a letter from Saxon Mortgage which informed him that his modification was being taken out of HAMP and that his modification request was denied. After receiving the letter, Cavil contacted Saxon Mortgage to discuss the additional HAMP modification he requested and he alleges that he was again told that he could submit another application for a loan modification, that a packet would be sent to him, and that he should take no action until his application was processed. Despite Saxon Mortgage's representations that it would work with him to modify his loan again and protect his home from

---

[1] New Century was the initial lender, but sometime after closing the lender sold the note.

going into foreclosure, Cavil alleges that, unbeknownst to him, Saxon Mortgage authorized its agent, NRT, to put the Property on the market for a transfer value of $340,000.00 and, on or around January 2010, the Property was sold at a non-judicial foreclosure sale for $340,000.00 to Saxon Mortgage Services (a subsidiary of Morgan Stanley). Cavil maintains that he was never notified that the Property was going to be foreclosed. Cavil alleges that he only learned about the sale when a representative from either Saxon Mortgage or NRT knocked on his door and informed him that the Property had been foreclosed and the was offered a monetary incentive of $4,800 in cash to immediately vacate the property.

Following the foreclosure sale, Cavil brought suit in state court against several defendants, including Chicago Title; as to Chicago Title, all of Cavil's claims appear to based on allegations that he was not told on or before closing that the residential lot he had purchased did not include the mineral rights. Thereafter, notice of removal was filed and the action was removed from state court to federal court on August 11, 2010.

After the action was removed, Cavil sought and received permission to amend his complaint.[2] In his Second Amended Complaint, based on fundamentally the same factual allegations he asserted in state court, Cavil asserted the following causes of action against Chicago Title: violation of the Texas Deceptive Trade Practice Act ("DTPA") and the Federal Deceptive Trade Practice Act "as well as, and the Tie-In violations of", breach of contract, negligence and

---

[2] Cavil's attorney filed "Plaintiff's Second Ammended [sic] Petition and Response to Defendant's Motion to Dismiss" on November 12, 2010 (Dkt. No. 24), and then "Plaintiff's Second Ammended [sic] Petition and Jury Demand Responses to Defendant's Motion to Dismiss" on November 17, 2010 (Dkt. No 27). Although counsel for Cavil does not explain the reason she filed the subsequent pleading, the Court will consider it to be the live pleading.

3

gross negligence, fraud, and conspiracy to conceal information from him. (Dkt. No. 27 at 2). Cavil seeks damages which consist of actual damages for the loss of the Property, including the loss of the mineral rights, damages for pain and suffering, and exemplary damages.

Chicago Title filed a Motion for Summary Judgment on November 3, 2011. (Dkt. No. 67). In support of its Motion, Chicago Title has submitted the following: (1) the real property contract; (2) the deed; (3) the Title Commitment; (4) the Title Policy; (5) a June 7, 2011 Letter to Plaintiff serving its First Request for Admissions to Plaintiff Ben A. Cavil, sent Certified Mail Return Receipt Requested; (6) the proof of delivery and return receipt for the June 7, 2011 letter; and (7) an affidavit from Chicago Title's attorney that no responses to the request for admissions were received. Cavil filed no response to Chicago Title's Motion for Summary Judgment and the Motion is now ripe for consideration.

## II. STANDARDS OF REVIEW

The Court analyzes Chicago Title's Motion under the well-established summary judgment standard. FED. R. CIV. P. 56(c); *see generally*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999); *United States v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992).

## III. DISCUSSION

Cavil has asserted claims against Chicago Title for violations of the both the Federal and Texas Deceptive Trade Practices Act ("DPTA"), the DTPA's tie-in provisions, negligence, gross negligence, fraud, and conspiracy to conceal. All of these claims are premised on Cavil's allegations that Chicago Title did not disclose the fact that the mineral rights to the Property were owned by third parties. However, as urged by Chicago Title in its Motion for Summary

Judgment, the evidence before the Court simply does not support his contentions. Rather, the Title Commitment, which Chicago Title provided to Cavil prior to closing, identified the third parties who owned the mineral rights associated with the Property. (Dkt. No. 67, Ex. 1C). Further, the evidence clearly reflects that by executing the Real Property Contract, Cavil was aware and expressly acknowledged that he was receiving the Property subject to the "reservation and/or exception of all mineral rights." (*Id.*, Ex. 1A).

Aside from these claims, Cavil also brings a claim against Chicago Title for breach of contract. This claim fares no better. There is no dispute that the only contract that existed between Cavil and Chicago Title was the Title Policy. Further, there is no evidence before the Court that Cavil ever made any claim(s) against the Policy and, even if Cavil had made a claim, there is simply no evidence that Chicago Title would not have performed its obligations under the Policy. Finally, to the extent alleged, there is also no evidence that Chicago Title ever made any representations to Cavil that were not contained in the Title Policy.

Accordingly, upon this record, the Court must conclude that no triable issues of fact exist to support any of Cavil's claims against Defendant Chicago Title.

## CONCLUSION

For all the reasons discussed herein, it is the **ORDER** of this Court that Chicago Title's Motion for Summary Judgment (Dkt. No. 67) is **GRANTED** and that all Plaintiff's claims against Defendant Chicago Title are **DISMISSED WITH PREJUDICE**.

DONE at Galveston, Texas, this 5th day of January, 2012.

JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE