IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| BEN A. CAVIL, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-10-304 |
| | § | |
| TRENDMAKER HOMES, INC., | § | |
| SAXON MORTGAGE, CHICAGO | § | |
| TITLE INSURANCE COMPANY, | § | |
| MORGAN STANLEY MORTGAGE | § | |
| CAPITAL HOLDINGS LLC, | § | |
| NRT LLC, and NEW CENTURY | § | |
| MORTGAGE CORP., | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Before the Court, with the consent of the parties, is Defendant Trendmaker Homes, Inc's ("Trendmaker") 12(b)(6) Motion to Dismiss (Docket Entry ("Dkt.") No. 51) and Trendmaker's "Motion for Summary Judgment On All Causes of Action Asserted By Plaintiff." (Dkt. No. 52). Despite the lack of response by Plaintiff to either Motion, the Court has carefully considered the Motions, the exhibits in the record from both parties,[1] and the applicable law. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988) (a court may not grant a default summary judgment, but may accept the movant's evidence as undisputed and determine movant's entitlement

---

[1] Included in its review are Plaintiff's exhibits. (Dkt. Nos. 33, 34).

1

to summary judgment based upon that undisputed evidence). After due consideration, the Court, for the reasons set forth below, **GRANTS** Trendmaker's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff Ben Cavil initially brought this action in state court against Defendants after his home, located at 3937 Lake Star Drive, League City, Texas (hereinafter "the Property"), was sold at foreclosure. By way of a brief history, on or about February 16, 2007, Cavil secured a first and second mortgage in the amount of $541,000.00 to purchase the Property from Trendmaker. Prior to closing on the Property, Chicago Title provided Cavil with a Title Commitment and issued a Title Policy.

At some point in time after closing on the Property, Cavil became unable to make his mortgage payment and sought a loan modification under the Home Affordable Modification Program ("HAMP"). Cavil qualified for the program and his loan was modified. Prior to making his second payment under the modified loan, Cavil explained to the lender that he was experiencing a family emergency and could not even make the modified payments. Faced with financial difficulties, Cavil sought another modification under HAMP. He alleges that he was told that he could do another modification and that a new HAMP application packet would be sent to him. Cavil alleges that on or around December 10, 2009, he received a letter from Saxon Mortgage which informed him that his modification was being taken out of HAMP and that his modification request was denied. After receiving the letter, Cavil contacted Saxon Mortgage to discuss the additional HAMP modification he requested and he alleges that he was again told that he could submit another application for a loan modification, that a packet would be sent to him, and that he should take no action until his application was processed. Despite Saxon Mortgage's

representations that it would work with him to modify his loan again and protect his home from going into foreclosure, Cavil alleges that, unbeknownst to him, Saxon Mortgage authorized its agent, NRT, to put the Property on the market for a transfer value of $340,000.00 and, on or around January 2010, the Property was sold at a non-judicial foreclosure sale for $340,000.00 to Saxon Mortgage Services (a subsidiary of Morgan Stanley). Cavil maintains that he was never notified that the Property was going to be foreclosed. Cavil alleges that he only learned about the sale when a representative from either Saxon Mortgage or NRT knocked on his door and informed him that the Property had been foreclosed and the was offered a monetary incentive of $4,800 in cash to immediately vacate the property.

Following the foreclosure sale, Cavil brought suit in state court against several defendants, including Trendmaker; as to Trendmaker, all of Cavil's claims appear to based on allegations that he was not told on or before closing that the residential lot he had purchased did not include the mineral rights. Thereafter, notice of removal was filed and the action was removed from state court to federal court on August 11, 2010.

After the action was removed, Cavil sought and received permission to amend his complaint.[2] In his Second Amended Complaint, based on fundamentally the same factual allegations he asserted in state court, Cavil asserted the following causes of action against Trendmaker: violation of the Texas Deceptive Trade Practice Act ("DTPA") and the Federal

---

[2] Cavil's attorney filed "Plaintiff's Second Ammended [sic] Petition and Response to Defendant's Motion to Dismiss" on November 12, 2010 (Dkt. No. 24), and then "Plaintiff's Second Ammended [sic] Petition and Jury Demand Responses to Defendant's Motion to Dismiss" on November 17, 2010 (Dkt. No 27). Although counsel for Cavil does not explain the reason she filed the subsequent pleading, the Court will consider it to be the live pleading.

Deceptive Trade Practice Act "as well as, and the Tie-In violations of", breach of contract, negligence and gross negligence, fraud, and conspiracy to conceal information from him. (Dkt. No. 27 at 2). Cavil seeks damages which consist of actual damages for the loss of the Property, including the loss of the mineral rights, damages for pain and suffering, and exemplary damages.

Trendmaker filed both a 12(b)(6) Motion to Dismiss and a Motion for Summary Judgment. (Dkt. Nos. 51, 52). In support of its Motion for Summary Judgment, Trendmaker has submitted the following: (1) Trendmaker Homes Purchase Agreement; (2) Defendant Trendmaker Homes, Inc.'s Request for Admissions to Plaintiff; (3) the General Warranty Deed With Vendor's Lien Retained; (4) the Title Insurance Policy; and (5) the United States postal Service scanned image of recipient information for item #7003 3110 0003 1157 4124." Cavil filed no response to either of Trendmaker's Motions and, while the Motions are now ripe for consideration, given the dispositive nature of the summary judgment motion, the Court limits its review to that Motion.

## II. STANDARDS OF REVIEW

The Court analyzes Trendmaker's Motion under the well-established summary judgment standard. FED. R. CIV. P. 56(c); *see generally, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999); *United States v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992).

## III. DISCUSSION

Cavil has asserted claims against Trendmaker for violations of the both the Federal and Texas Deceptive Trade Practices Act ("DPTA"), the DTPA's tie-in provisions, negligence, gross negligence, fraud, and conspiracy to conceal. All of these claims are premised on Cavil's allegations that Trendmaker did not disclose the fact that the mineral rights to the Property were

4

owned by third parties. However, as urged by Trendmaker in its Motion for Summary Judgment, the evidence before the Court simply does not support his contentions. Rather, the March 11, 2006, Purchase Agreement between Trendmaker and Cavil provided that the "General Warranty Deed to the Property" would be conveyed "subject to all matters of record affecting the Property; including the reservation and/or exception of all mineral rights." (Dkt. No. 52, Exs. 1, 3). Further, the Title Commitment, which the title company provided to Cavil prior to closing, identified the third parties who owned the mineral rights associated with the Property. (Dkt. 52, Ex. 4).

Notwithstanding, and for purposes of his DTPA, negligence, gross-negligence and misrepresentation claim, Cavil's allegations that Trendmaker made false, misleading or deceptive statements regarding the liens and/or reservation of mineral rights are now time barred. In particular, given the disclosures provided to him in these documents, Cavil either knew or should have known this information on the date he entered into the Purchase Agreement (March 11, 2006) or, at the latest, on or before the date of closing (February 16, 2007) when he was provided with the Title Commitment for the Property which expressly identified the particular mineral reservations and other encumbrances. Nevertheless, Cavil failed to bring suit against Trendmaker until May 14, 2010, more than two years after purchasing and closing on the Property.

Aside from these claims, Cavil also brings a claim against Trendmaker for breach of contract. This claim fares no better. There is no dispute that the only contract that existed between Cavil and Trendmaker was the Purchase Agreement. Moreover, as clearly provided in the Purchase Agreement and then later in the Warranty Deed, Trendmaker never agreed to sell Cavil the mineral rights to the Property. Instead, Trendmaker only agreed to sell the Property to him subject to any and all existing reservations. (Dkt. No. 52, Exs. 1, 3).

Accordingly, upon this record, the Court must conclude that no triable issues of fact exist to support any of Cavil's claims against Defendant Trendmaker.

## CONCLUSION

For all the reasons discussed herein, it is the **ORDER** of this Court that Trendmaker's 12(b)(6) Motion to Dismiss (Dkt. No. 51) is **DENIED AS MOOT**, that Trendmaker's Motion for Summary Judgment (Dkt. No. 52) is **GRANTED** and that all Plaintiff's claims against Defendant Trendmaker are **DISMISSED WITH PREJUDICE**.

**DONE** at Galveston, Texas, this ___6th___ day of January, 2012.

_____
JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE