IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| BEN A. CAVIL, | § § § § | |
| Plaintiff | | |
| v. | § § § | CIVIL ACTION NO. G-10-304 |
| TRENDMAKER HOMES, INC., SAXON MORTGAGE, CHICAGO TITLE INSURANCE COMPANY, MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, NRT LLC, and NEW CENTURY MORTGAGE CORP., | § § § § § § § § § | |
| Defendants. | § | |

## OPINION AND ORDER

Before the Court, with the consent of the parties, is Defendants Saxon Mortgage Service, Inc. ("Saxon") and Morgan Stanley Capital Holdings LLC's ("Morgan Stanley") Motion for Summary Judgment. (Dkt. No.49). Plaintiff filed his "Response to Saxon Motion for Summary Judgment, Plaintiff's Motion for Summary Judgment Against Saxon and Plaintiff's Motion for a Deficiency Judgment" (Dkt. Nos. 61, 62)[1], to which Defendants filed a Reply (Dkt. No. 65) and a "Response to [Plaintiff's] 'Motion for Deficiency Judgment.'" (Dkt. No. 68). After careful

---

[1] The Court pauses to note that docket number 61 appears to be identical to docket number 62 in all respects except for the attached exhibits.

consideration of the Motions, the submissions from the parties,[2] and the applicable law, the Court, for the reasons set forth below, **DENIES** Plaintiff's Motions, **GRANTS** Defendants Saxon and Morgan Stanley's Motion for Summary Judgment and **DISMISSES, WITH PREJUDICE,** Plaintiff's complaint in its entirety.

## I. BACKGROUND

Plaintiff Ben Cavil initially brought this action in state court against Defendants after his home, located at 3937 Lake Star Drive, League City, Texas (hereinafter "the Property"), was sold at foreclosure. By way of a brief history, on or about February 16, 2007, Cavil secured a first and second mortgage in the amount of $541,000.00 to purchase the Property from Trendmaker. To facilitate the transaction, New Century Mortgage Corporation acted as the lender and Chicago Title acted as the title company.

At some point in time after closing on the Property, Cavil became unable to make his mortgage payment and sought a loan modification under the Home Affordable Modification Program ("HAMP"). Cavil qualified for the program and his loan was modified by Saxon.[3] Prior to making his second payment under the modified loan, Cavil explained to the lender that he was experiencing a family emergency and could not even make the modified payments. Thereafter, and still faced with financial difficulties, Cavil sought another modification under HAMP from Saxon. On or around December 10, 2009, Cavil received a letter from Saxon which informed him that his modification was being taken out of HAMP and that his second modification request was

---

[2] Included in its review are Plaintiff's previously filed exhibits. (Dkt. Nos. 33, 34).

[3] Saxon Mortgage and Morgan Stanley Mortgage Capital Holdings, LLC are subsidiaries Morgan Stanley. *See* Dkt. No. 1, Ex. F.

2

denied. After receiving the letter, Cavil contacted Saxon. Cavil claims that he was again told by a representative for Saxon that he could submit another application for a loan modification, that a packet would be sent to him, and that he should take no action until his application was processed. Cavil alleges that, despite the representations that Saxon would continue to work with Cavil to modify his loan again and protect the Property from going into foreclosure, Saxon authorized its agent to initiate foreclosure. On or around January 2010, the Property was sold at a non-judicial foreclosure sale for $340,000.00 to Morgan Stanley. Cavil claims that he was never notified that the Property was going to be foreclosed and further claims that he only learned about the sale when a representative from either Saxon or NRT knocked on his door, informed him that the Property had been foreclosed and offered him a monetary incentive of $4,800 to immediately vacate the Property.

Following the foreclosure sale, Cavil brought suit in state court against several defendants, including Saxon and Morgan Stanley. A notice of removal was filed and the action was removed from state court to federal court on August 11, 2010. After this Court assumed jurisdiction over this action, Cavil sought and received permission to amend his complaint.[4] In his Second Amended Complaint, Cavil alleged numerous causes of action against Defendants Saxon and Morgan Stanley based on violations of the following: (1) the Real Estate Settlement Procedure Act ("RESPA"); (2) the Texas Deceptive Trade Practice Act ("DTPA") and the Federal Deceptive Trade Practice

---

[4] Cavil's attorney filed "Plaintiff's Second Ammended [sic] Petition and Response to Defendant's Motion to Dismiss" on November 12, 2010 (Dkt. No. 24), and then "Plaintiff's Second Ammended [sic] Petition and Jury Demand Responses to Defendant's Motion to Dismiss" on November 17, 2010 (Dkt. No 27). Although counsel for Cavil does not explain the reason she filed the subsequent pleading (Dkt. No. 27), the Court will consider it to be the live pleading.

Act "as well as, and the Tie-In violations of the a.) Fair Debt Collection Act[,] b) Breach of Warranties[,] c.) Failure to Make Disclosure, d.) Insurance Code Violations[;]" (3) § 302.001 of the Texas Finance Code; (4) usury laws; (5) fraud; (6) negligence; (7) gross negligence; (8) negligence pro se; (9) wrongful foreclosure; (10) harassment; (11) conspiracy; (12) promissory estoppel; and (13) breach of contract. (Dkt. No. 27 at 2). Cavil seeks damages from Defendants for the loss of the Property, which he claims includes the loss of the mineral rights, damages for pain and suffering, and exemplary damages.

Saxon and Morgan Stanley filed a Motion for Summary Judgment. (Dkt. Nos. 51, 52). Cavil filed a response to this Motion, his own Motion for Summary Judgment and a "Motion for a Deficiency Judgment" (Dkt. Nos. 61, 62), to which Saxon and Morgan Stanley filed their respective reply and response. (Dkt. Nos. 65, 68). The cross-motions are now ripe for consideration.

## II. STANDARDS OF REVIEW

The Court analyzes the Motions under the well-established summary judgment standard. FED. R. CIV. P. 56(c); *see generally, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 576, 586-87 (1986); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999); *United States v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992).

## III. DISCUSSION

### A. Claim for Violation of RESPA

Cavil alleges that Defendant Saxon violated different provisions of the Real Estate Settlement Procedure Act ("RESPA").[5] The parties both move for summary judgment on the claims. (Dkt. No. 49 at 7-9; Dkt. Nos. 61/62 at 10-16).

Cavil first alleges that Saxon violated § 2605(c). This subsection requires a transferee to give notice to the owner when a note on a mortgage is transferred. 12 U.S.C. § 2605(c). In order to recover based on a breach of 12 U.S.C. § 2605(c), a plaintiff must establish through competent evidence, that he was not provided notice when his loan was transferred and that any such failure resulted in actual damages to him. 12 U.S.C. § 2605 (c), (f). A plaintiff may also support his claim by showing that the transferee engaged in a "pattern or practice of noncompliance with the requirements of [12 U.S.C. § 2605]." *See id.*

In the present case, there is no evidence – only unsworn and unsupported allegations – to support Cavil's claim that Saxon failed to provide him with the requisite notice of its acquisition of his note. Nor is there any evidence that any such failure, assuming one occurred, resulted in actual damages to him or that Saxon engaged in a pattern or practice of noncompliance. *See* 12 U.S.C. § 2605(f). In fact, seriously undercutting his claim is that Cavil alleges that he sought and obtained his first loan modification from Saxon. The Court, therefore, concludes that summary judgment for Saxon is appropriate as to Cavil's RESPA claim under subsection (c).

---

[5] Cavil's RESPA claims against Morgan Stanley were previously dismissed.

Turning to Cavil's claim under 12 U.S.C. § 2605(e), the Court finds that it fares no better. Pursuant to subsection (e), a loan servicer is required to respond, within a specified period of time, to "qualified written requests from the borrower ... for information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A) (emphasis added). The term "servicing" is defined in 24 CFR § 3500.2 as:

> ... receiving any scheduled periodic payments from a borrower pursuant to the terms of any mortgage loan, including amounts for escrow accounts under section 10 of RESPA (12 U.S.C. 2609), and making the payments to the owner of the loan or other third parties or of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the mortgage servicing loan documents or service contract....

A careful review of the record reveals no evidence that establishes that Cavil sent Defendants any correspondence that constituted a "qualified written request." While the record does contain a May 5, 2010, letter that Cavil's attorney sent on his behalf, in the letter he complains of the failure to modify his loan, that real estate agents were harassing him, and that the property subject to the mortgage was sold to him without disclosure that the mineral rights were not included. (Dkt. No. 34, Ex. 15 (letter); Dkt. No. 61 at 15 (reference)). These issues, however, are outside the scope of the term "servicing" as defined in 24 CFR § 3500.2 and, hence, would not have triggered a duty upon Defendants to respond in accordance with § 2605. *See*, *MorEquity, Inc. v. Naeem*, 118 F.Supp.2d 885, 901 (N.D.Ill.2000) (a request for information relating to validity of loan documents was not a request for information relating to servicing of the loan); *Williams v. Wells Fargo Bank, N.A., Inc.*, 2010 WL 1463521 at *3 (N.D.Cal. April 13, 2010) (a request for documents relating to borrowers' options for loan modification, short sale, or bankruptcy was not a request for information relating to the servicing of the loan).

Notwithstanding, even assuming that Cavil's May 2010 letter constituted such a request (See Dkt. No. 34, Ex. 15), the evidence clearly reflects that it was not sent until months after the January 5, 2010, foreclosure sale of the Property – a point in time in which Defendants were no longer a "servicer" of the loan. 12 U.S.C. § 2605(e). Nor is there any evidence that the failure to respond to the May 2010 letter, even to the extent that it was a "qualified written request," resulted in actual damages to Cavil or from a "pattern or practice of noncompliance with the requirements of [12 U.S.C. § 2605]." *See* 12 U.S.C. § 2605(f); *see also, Hutchinson v. Delaware Sav. Bank FSB*, 410 F.Supp.2d 374, 383 (D.N.J.,2006) (finding that "[p]laintiffs must, at a minimum, also allege that the breach resulted in actual damages."); *Reynoso v. Paul Financial, LLC*, No. 09-3225 SC, 2009 WL 3833298, 7 (N.D.Cal. Nov.16, 2009) (dismissing a RESPA claim that alleged damages in a conclusory manner and that failed to describe the putative QWR); *Singh v. Washington Mut. Bank*, No. C-09-2771 MMC, 2009 WL 2588885, *5 (N.D.Cal. Aug.19, 2009) (dismissing a RESPA claim that only contained a conclusory allegation that the defendants were liable for damages). Thus, finding no evidentiary support for Cavil's claim under this subsection, it must be dismissed.

Accordingly, for the reasons discussed, the Court concludes that Defendants' Motion for Summary Judgment regarding Cavil's RESPA claims must be granted.

### B. Claims for Violations of Texas and Federal DTPA & Tie-In Provisions

In his live Complaint, Cavil alleges that Defendants Saxon and Morgan Stanley violated the Fair Debt Collection Act. (Dkt. No. 27 at 2). Defendants move for dismissal of Cavil's claims under the Federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 (1982), and, to the extent alleged, under the Texas Debt Collection Act (TDCA),

TEX.REV.CIV.STAT.ANN. arts. 5069-11.01 to 5069-11.11 (Vernon Supp.1985). (Dkt. No. 6, at 16, ¶ 17). Dismissal of these claims is proper. While these Acts make it unlawful for debt collectors to use abusive tactics while collecting debts for others, the Defendants are not "debt collectors" under the federal act[6] and a review of the record reveals no triable issue of fact exists from which to establish a violation of either Act occurred. Accordingly, the Court concludes that Defendant's Motion is meritorious and should be granted.

### C. Claim for Violation of Usery Laws

Cavil alleges that Saxon and Morgan Stanley violated the usury laws. Dkt. No. 27 at 13-14). Both parties have moved for summary judgment on this claim. (Dkt. No. 49 at 6-7; Dkt. Nos. 61/62 at 8-10). To establish a usery claim, a plaintiff must show that the defendant loaned him money, the plaintiff had an absolute obligation to repay the principal and that the defendant contracted for, charged or received interest that exceeded the maximum amount allowed by law. *First Bank v. Tony's Tortilla Factory*, 877 S.W.2d 285, 287 (Tex. 1994).

In the present case there is no dispute that Cavil obtained a two separate loans to purchase the Property. Further, based on undisputed evidence before the Court, the first note carried a fixed interest rate of 7.575% and the second note carried a fixed rate of 9.8%. (Dkt. No. 49, Exs. A-1, A-4). Despite Cavil's assertions, neither rate supports a claim of usury. *See* Tex. Fin.

---

[6] The federal act provides that the term "debt collector" does not include: "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (ii) concerns a debt which was originated by such person [or] (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(G). Further, the legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned and, here, there is no such evidence. *See* S.Rep. No. 95-382, 95th Cong., 1st Sess. 3, reprinted in 1977 U.S.Code Cong. & Ad.News 1695, 1698. *See also, Kizer v. Finance America Credit Corp.*, 454 F.Supp. 937, 939 (N.D.Miss. 1978).

Code §§ 303.001, 303.009 (providing that generally the maximum interest rate chargeable under a written contract is 18%). Accordingly, Defendants Saxon and Morgan Stanley are entitled to summary judgment on this claim.

### D. Claims for Negligence, Gross Negligence and Negligence Per Se

Cavil brings claims against Defendants Saxon and Morgan Stanley for negligence, gross negligence and negligence per se. Defendants seek summary judgment as to all of these claims.

In order to recover based on a claim of negligence, the plaintiff must prove (1) the existence of a legal duty, (2) the breach of that duty, and (3) damages proximately caused by the breach. *See Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998). In the present case, Cavil cannot, as a matter of law, prevail on a claim for negligence against these Defendants because he has not shown the existence of any legal duty owed him. Despite Cavil's allegations,[7] a legal duty does not exist absent a special relationship between the parties and, as is the case here, no such duty and/or relationship exists between a mortgagor and mortgagee. *FDIC v. Coleman*, 795 S.W.2d 706, 709 (Tex. 1990); *see also, Collier v. Wells Fargo Home Mortgage*, No. 7:04-CV-86, 2006 WL 1464170 at *8 (N.D. Tex. may 26, 2006) (acknowledging no special relationship exists between a mortgagor and mortgagee).

Not dissuaded, Cavil also appears to argue that Article 16, Section 50(a)(6)(B) of the Texas Constitution imposes such a duty on these Defendants.[8] (Dkt. No. 27 at 20, ¶ 96). Unfortunately,

---

[7] Cavil claims that these Defendants "had a duty to [him regarding] modification services, protecting [his] home, managing [his] escrow account, loan account, [his] deed of trust, [his ] property and protecting [his] home." (Dkt. No. 27 at 19-20). Cavil further alleges that these Defendants violated this duty when they permitted his house to be foreclosed. (*Id.*).

[8] The Court assumes this provision forms the basis for his negligence per se claim.

9

for Cavil, this argument also lacks merit for several reasons. First, this provision of the Texas Constitution does not protect "homesteads" from forced sale for the payment of debts for the purchase money for the Property. TEX.CONST. art. XVI, § 50(a)(1). Second, while Cavil relies on subsection (a)(6)(B), it has no application based on the facts of the case. TEX.CONST. art. XVI, § 50(a)(1).

However, assuming arguendo that Cavil could establish a duty existed, he would still not be entitled to recover based on a claim of negligence because it would be barred by the economic loss doctrine. *Dewayne Rogers Logging, Inc. v. Propac Indust.*, 299 S.W.3d 374, 382-83 (Tex.App. [12th Dist.] 2009, pet. denied) (where the only injury claimed is for economic damages recoverable under a breach of contract claim, a negligence claim is barred by the economic loss doctrine); *see also, Blanche v. First Nationwide Mortgage Corp.*, 74 S.W.3d 444, 452-53 (Tex.App.–Dallas 2002, no pet.) ("permitting a tort recovery for purely economic loss would be a duty standard that sweeps too broadly.").

Finally, because Cavil cannot establish the basic elements of a negligence claim, he cannot establish the additional elements necessary to support a gross negligence claim or a negligence per se claim. For all of these reasons, the Court, therefore, concludes that Defendants' Motion be granted as to these claims.

### E. Claim for Wrongful Foreclosure

Cavil asserts a claim against these Defendants for wrongful foreclosure. Defendants maintain that summary judgment in their favor is appropriate because no, or insufficient, evidence exists to establish the requisite elements of this claim. (Dkt. No. 49 at 9-11).

To prevail on a wrongful foreclosure claim, a plaintiff must be able to establish that (1) there was a defect in the foreclosure proceedings, (2) the selling price at foreclosure was grossly inadequate, and (3) there is a causal connection between the defect in the foreclosure and the grossly inadequate selling price. *Sauceda v. GMAC Mortgage Corp.*, 268 S.W.3d 135, 139 (Tex.App.–Corpus Christi 2008, no pet.).

Initially, Cavil claims that the foreclosure must be set aside because there was a defect in the proceeding – namely, that he did not receive the notice of the sale. The law provides that notice is complete when it addressed to the debtor at that debtor's last known address as shown by the records of the holder of the debt and the notice is deposited in the mail. TEX. PROP. CODE § 51.002(e). The evidence before the Court reflects that Cavil was sent the requisite notice of the January 5, 2010, foreclosure sale. (Dkt. No. 49, Ex. B). Cavil's claim, therefore, lacks merit.[9] *See, Adebo v. Litton Loan Servicing, L.P.*, No. 01-07-708-CV, 2008 WL 2209703, at * 4 (Tex.App.–Houston [1st Dist.] may 29, 2008, no pet.) (explaining that "[t]he dispositive inquiry under section 51.002(e) . . . is not receipt of notice, but, rather, service of notice.").[10] Nor does the evidence support Cavil's other allegations that any defect existed in the notices.[11]

---

[9] The Court also pauses to note that, based on his own allegations, Cavil was living at the Property where the notices were sent.

[10] Although Cavil argues that he is entitled to rebut the statutory presumption, he offers no evidence – not even a sworn statement on his part – from which to rebut the presumption.

[11] In his pleadings, Cavil makes allegations that the notices were also defective because the substitute trustee did not have authority to issue the notice, but his claims are unsupported and conclusory. He also claims that the notices were defective because he was instructed to make payment to the wrong servicer, however, the evidence simply does not support his contentions. (*See* Dkt. No. 65 at 7, ¶ 14). Instead, the undisputed evidence before the Court establishes that Cavil had two loans on the Property. While one of the loans at issue, Loan Number 200261330 was transferred to Ocwen [sic] Loan Servicing, LLC effective November 16, 2009 (Dkt. No. 49, Ex. A-7), the statutory notices sent to him were in regard

Cavil next alleges that the sale was wrongful because the Property was sold at foreclosure for a grossly inadequate price. In an attempt to support this claim, Cavil submits the valuation of the Property that was done after he entered into the purchase agreement with Trendmaker in 2006, but before he closed on the Property in February 2007. This is insufficient, however, to establish the value of the Property at the time of the foreclosure in 2010. *Baker v. Countrywide Home Loans, Inc.*, No. 3:08-CV-0916-B, 2009 WL 1810336, at *4 (N.D. Tex. June 24, 2009). Cavil also attempts to shoulder his burden by pointing to posting on a website, however this evidence, unauthenticated and hearsay, is not sufficient to establish that the Property was sold at foreclosure in 2010 for a grossly inadequate price.

Finally, Cavil appears to suggest that the Property was wrongfully foreclosed in violation of Article 16, § 50 of the Texas Constitution. This claim has no merit. This provision in the Texas Constitution safeguards an individual's homestead from foreclosure for debts incurred, but it does not preclude a senior mortgagor from foreclosing on the Property, as was the case here, when the individual defaults on the note that purchased the homestead.

Accordingly, for all the reasons discussed, the Court concludes that Defendants' Motion must be granted on these claims.

### F. Claim for Breach of Contract & Promissory Estoppel

Cavil alleges that Defendants Saxon and Morgan Stanley's actions prior to the foreclosure sale constituted a breach of contract and these Defendants owed him the duty of good faith and fair dealing. (Dkt. No. 27 at 16-18). Defendant argues that Cavil breached the contract when, as he

---

to the other loan at issue, Loan Number 200261333. (Dkt. No. 49, Ex. B-1).

concedes, he defaulted on the payments.[12] Defendant also argues that any alleged promise to modify the agreement once again was not an enforceable contract and violates the Statute of Frauds. (Dkt. No. 49, 11-14).

The undisputed evidence reflects that Cavil failed to make his monthly mortgage payments and was, thus, in breach of the contract. Notwithstanding, Cavil appears to allege that his breach is of no consequence because he communicated his financial hardships to Defendants, they allegedly assured him that he could apply for a second modification and that they would continue to work with him so that he could stay in the home. Problematically, for Cavil, the Statute of Frauds is strictly adhered to in Texas with regard to any promises or agreements to modify a contract. *See* Tex. Bus. Com. Code § 26.02 (a loan agreement is not enforceable unless the agreement is in writing and signed by the party to be bound or by the party's authorized representative); *See Deuley v. Chase Home Finance LLC*, No. 4:05-CV-4253, 2006 WL 1155230, at * 2 (S.D. Tex. April 26, 2006) (explaining that under Texas law when an agreement purports to modify an agreement that must be in writing, the modification must also be in writing or it is unenforceable). Where the Statute of Frauds is not satisfied, as is clearly the case here, a subsequent claim for a breach of contract cannot proceed.

There are, of course, exceptions that the law recognizes to the defense of the Statute of Frauds which include promissory estoppel. *EP Operating Co. v. MJC Energy Co.*, 883 S.W.2d 263, 268-69 (Tex.App.–Corpus Christi 1994, writ denied). However, in addition to a plaintiff

---

[12] To allege a claim for breach of contract, Texas law requires a plaintiff to allege: (1) that a valid contract existed; (2) that there was performance or tendered performance by the plaintiff; (3) that there was a breach of the contract by defendant; and (4) that plaintiff sustained damages as a result of the breach. *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex.App.–Houston [1st Dist.] 1997, no writ).

being able to show the requisite elements of promissory estoppel,[13] Texas law requires that a plaintiff also be able to establish that the defendant promised to sign an agreement satisfying the statute of frauds. *"Moore" Burger, Inc. v. Phillips Pet. Co.*, 492 S.W.2d 934, 937 (Tex. 1972). Because no such evidence exists in this record, Cavil's claims fail. In other words, no triable issues of fact exist to support this claim against Defendants Saxon and Morgan Stanley.

## CONCLUSION

For all the reasons discussed herein, it is the **ORDER** of this Court that Plaintiff's Motions for Summary Judgment and Deficiency Judgment (*See* Dkt. Nos. 61, 62) are **DENIED**, that Saxon and Morgan Stanley's Motion for Summary Judgment (Dkt. No. 49) is **GRANTED**, and that all of Plaintiff's claims against Defendants Saxon and Morgan Stanley are **DISMISSED WITH PREJUDICE**.

**DONE** at Galveston, Texas, this ____19th____ day of January, 2012.

_____
JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE

---

[13] The elements of a promissory estoppel claim are: (1) a promise; (2) reliance thereon that was foreseeable to the promisor; and (3) substantial reliance by the promisee to his detriment." *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 378–79 (Tex.App.-Houston [1st Dist.] 2007, no pet.) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex.1983)). In addition, while not necessarily a pleading element, estoppel also requires a showing that "injustice can be avoided only by the enforcement of the promise." *See Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 864 n. 11 (5th Cir. 1999).